**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 15 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JONES, WALDO, HOLBROOK &
MCDONOUGH, a Utah Professional
Law Corporation,

   Plaintiff-Appellee,

DANIEL L. BARTLEY, an individual;
SHARON L. GREEN, an individual;
KRUSE, LANDA & MAYCOCK, a
Utah Professional Law Corporation;
COHNE, RAPPAPORT & SEGAL,
P.C., a Utah Professional Law
Corporation; THE KINNAMON
GROUP, a Utah corporation; UNITED
STATES OF AMERICA,

   Defendants-Appellees,

v.

DAVID G. CADE, an individual,

   Defendant-Appellant,

and

JEFFREY H. HUBBARD,
an individual,

   Defendant.

Nos. 02-4248 & 03-4168
(D.C. No. 2:01-CV-933-PGC)
(D. Utah)

## ORDER AND JUDGMENT [*]

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

David G. Cade appeals from the district court's grant of summary judgment and disbursement of funds in favor of appellees. Cade argues that the district court erred by (1) failing to manifest substantial justice in the administration and disposition of this case; and (2) deciding six motions for summary judgment in favor of appellees when material questions of fact remained. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM** .

## I

This case arose as the result of a settlement reached in a prior state court action commenced by Cade against Zions First National Bank ("Zions Bank"). Under the terms of the settlement, Cade became entitled to an award of $1.75 million. Cade was represented during the lengthy state litigation by a number of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

attorneys who claimed that they had not been paid for their legal services. They accordingly requested that Zions Bank pay them their unpaid fees from Cade's settlement proceeds. In addition, the Kinnamon Group claimed that Cade owed it the balance due on a secured promissory note that Cade had executed in its favor. Finally, the Internal Revenue Service ("IRS") asserted that Cade was indebted to the United States for unpaid federal taxes.

**A**

The facts giving rise to this case began in December 1988, when Cade entered into an employment contract with Zions Bank. Cade's contract specified the rate of commission he would receive, and at some point, Cade determined he was not being paid according to the terms of his contract. Cade retained the law firm of Cohne, Rappaport & Segal ("CRS") and commenced an action against Zions Bank in state court in Utah. The state court ordered the parties to participate in arbitration over the objections of CRS. Cade's relationship with CRS deteriorated and CRS recorded a notice of claim with the Salt Lake County Recorder for an attorney's lien for unpaid fees. CRS subsequently obtained a valid judgment and declaration of a valid attorney's lien against the proceeds of the Zions Bank litigation for $32,500 plus interest accruing from March 19, 1998.

In August 1993, Mr. Cade hired Daniel L. Bartley and Sharon L. Green to act as legal counsel. Bartley and Green represented Cade in the Zions Bank

arbitration before the National Association of Securities Dealers ("NASD") as ordered by the court. Cade agreed to pay Bartley and Green forty percent of any awards received.

In April 1996, Cade was awarded $460,823 from the arbitration. Unhappy with the award and with Bartley and Green, Cade ended his relationship with them without paying their fees. Bartley and Green then filed an attorney's lien against the proceeds of the Zions Bank litigation, which was recorded with the Salt Lake County Recorder. On August 6, 1998, a valid judgment for attorney's fees and costs totaling $184,329.20 was entered in favor of Bartley and Green in Nevada. The judgment was domesticated in Utah.

In May 1996, Anthony Rampton, then with the law firm of Fabian & Clendenin ("F&C"), agreed to represent Cade and appeal the order requiring NASD arbitration of Cade's claims. Cade signed a contract with F&C agreeing to pay them at an hourly rate and to give them fifteen percent of any awards received over one million dollars. In January 1997, Rampton appealed the arbitration award. Shortly thereafter, Rampton left F&C to join the law firm of Kruse, Landa & Maycock ("KLM"). The $61,062.87 of accounts receivable followed Rampton to KLM. Cade signed another contract for attorney's fees with KLM.

In April 1998, the Utah Court of Appeals granted the motion to vacate the arbitration award and remanded the matter for trial. Rampton began preparing the case for trial, but informed Cade that the case required more work than he originally believed necessary due to its complexity. In December 1998, Rampton left KLM for the law firm of Jones, Waldo, Holbrook & McDonough ("Jones Waldo"). Due to the large outstanding balance owed by Cade, Rampton tried unsuccessfully to find a new attorney.

In September 1999, Rampton wrote to Cade and gave him an accounting of the $249,158.57 in legal fees and costs that Cade owed Rampton and the prior firms that had represented Cade. In November 1999, Cade signed a retainer agreement with Jones Waldo in which he agreed to pay attorney's fees on an hourly basis, plus a twenty percent contingency fee for all sums of money received from the Zions Bank litigation in excess of $500,000. During 1999 and early 2000, discovery continued in the Zions Bank litigation. Ultimately, the litigation involved over twenty depositions, numerous experts, and thousands of pages of documents.

In July 2000, Cade acknowledged to Rampton that he had no funds. Rampton referred him to the Kinnamon Group. Cade took out a loan of $75,000 from the Kinnamon Group and signed a security agreement. The loan was

secured by the judgment in the Zions Bank litigation. Cade made no payments on the note.

Also in July 2000, Jones Waldo sent a letter to Cade informing him of a potential conflict of interest because another attorney at Jones Waldo had represented Zions Bank on employment law matters unrelated to Cade's case. Cade signed a consent to this conflict. This was followed by a letter in September 2000 requesting Cade's consent to Rampton's continued representation despite Jones Waldo's representation of Zions Bank on other matters. Ultimately, Cade signed four different consent letters.

In September 2000, Cade's case against Zions Bank finally went to trial. A damages expert testified that Cade had suffered damages in a range between $441,441 and $6,400,000. At the close of trial, Zions Bank moved for a directed verdict on the attorney's fees and fraud claims. The court denied the motion on the attorney's fees but reserved ruling on the fraud claim until after the jury verdict.

In October 2000, the jury awarded Cade $441,000 in compensatory damages and $536,000 in additional damages. Following this verdict, proceedings were to continue to a punitive damages hearing. Zions Bank immediately moved for a clarification of the verdict and renewed its motion on the fraud claims. On the afternoon of the verdict, the parties met to discuss

a settlement. The parties negotiated through the night and Zions Bank offered to settle for $1.75 million. Cade authorized the settlement and the attorneys met with the judge and told him they had settled the case.

Settlement papers were drawn up, but Cade had not finalized the total amount due on an outstanding IRS lien. The parties continued to negotiate until February 2001. At that point, the judge ordered the parties to file the settlement agreement or he would dismiss the case with prejudice. In March 2001, the court entered a settlement order for $1.75 million. Shortly after the settlement, Cade stopped working with Rampton and hired Jeffrey Hubbard as his new attorney.

**B**

In July 2001, Zions Bank filed a motion in state court to interplead the settlement proceeds in order to determine the respective rights of the claimants, and to deposit the proceeds in the court's registry. The court granted the motion and the $1.75 million was deposited with the court. Subsequently, Jones Waldo filed the instant separate action in state court and named as defendants all other parties that it believed had potential competing claims to the fund, namely, Cade; attorneys Hubbard, [1] Green and Bartley; the law firms of KLM and CRS; the Kinnamon Group; and the United States. The government removed the case

---

[1] Mr. Hubbard died during the pendency of this action and he was dismissed from this case by the district court on January 27, 2003.

to the United States District Court for the District of Utah, and caused the fund to be transferred to the district court.

In addition to the claims to the settlement proceeds filed by the other parties, Cade filed counterclaims against Jones Waldo, specifically against Rampton, alleging breach of fiduciary duty, malpractice and negligence in the handling of Cade's litigation with Zions Bank. Cade also counter-claimed against KLM for the same claims against Rampton while he was working with that firm. Jones Waldo filed a motion for summary judgment on Cade's counterclaims and on its breach of contract claim for unpaid attorney's fees and costs. KLM also filed a motion for summary judgment on Cade's counterclaims and on its claim for a portion of the settlement proceeds for unpaid attorney's fees and costs.

Cade filed a written response to Jones Waldo's motion, but did not file a response to KLM's motion. On October 17, 2002, the district court held oral argument on the motions. On November 13, 2002, the court issued an order granting partial summary judgment to both firms, holding they had valid claims to the fund for reasonable attorney's fees. The order left for the court's later determination the amount and priority of their claims, and it set a schedule for going forward with the disposition of all remaining claims of the parties. The order also acknowledged that Cade's counsel had filed a motion to withdraw. The court granted the motion to withdraw effective December 11, 2002, provided

that Cade's counsel filed a responsive brief to the other parties' motions for summary judgment.

The remaining parties filed motions for summary judgment on the priority and amount of their claims, but due to an error in the clerk's office, Cade's counsel did not receive these pleadings. On December 9, 2002, Cade, appearing pro se, filed a premature notice of appeal of the district court's November 13th order. On December 11, 2002, all of the parties with claims to the fund, with the exception of Cade, submitted an agreed proposal for distribution of the fund, which proposed to settle the issues of priority and amounts of the claims to be distributed from the fund. In that proposal, a claim for unpaid attorney's fees was added by Rampton, acting on behalf of F&C, in connection with his previous representation of Cade during the Zions Bank litigation. The court accepted the proposed settlement offer in lieu of the briefing it had requested in its November 13th order.

On January 9, 2003, Cade's counsel filed objections to the settlement agreement. On January 10, 2003, the court held a hearing on the pending motions in the case. The court granted the motion to withdraw from Cade's counsel. The court further ordered Cade to file, either proceeding pro se or with new counsel, any responses to the pending motions for summary judgment from CRS, Bartley and Green, the Kinnamon Group, and the IRS by January 31, 2003. In addition,

Cade was granted the opportunity to file any objections to the reasonableness of the fees of Jones Waldo and KLM, beyond those raised in his counsel's objections to the settlement agreement; however, Cade was ordered to demonstrate good cause as to why any new arguments he might raise as to the reasonableness of fees were not raised earlier.

On January 31, 2003, in a pro se response captioned "Affidavit of David Cade," Cade set forth his arguments against the summary judgment claims of the parties. On March 24, 2003, the district court issued an order granting the motions for summary judgment in favor of Bartley and Green, CRS, the Kinnamon Group, and the IRS. Because the aggregate of all the parties' claims exceeded the $1.75 million of settlement proceeds in the fund, the court accepted the settlement stipulation and ordered that the fund be distributed in accordance with the stipulation, thereby leaving Cade with no portion. The court allowed any interested party to file a brief by April 25, 2003, to demonstrate good cause why the fund should not be disbursed in accordance with its ruling and the stipulation. No objections to the disbursement were filed. On April 29, 2003, the court entered a final order. Cade then filed an amended notice of appeal, which this court consolidated with Cade's previously filed premature appeal.

## II

Cade's first issue on appeal is that the district court failed to manifest substantial justice in the administration and disposition of this case. It appears as though Cade is making a general due process argument. To support this apparent due process argument, Cade makes some minor complaints, but the main arguments that can be gleaned from the brief are: (1) the district court improperly removed Cade's counsel; (2) the district court ignored material issues of fact when deciding the summary judgment motions; (3) the district court ordered Cade to file six major pleadings in twenty-one days when he was proceeding pro se; and (4) the district court erred in determining the reasonableness of the fees. Cade's second and fourth arguments speak to the merits of the summary judgment motions. These arguments are therefore analyzed in the context of the summary judgment rulings in section III infra.

Cade's remaining due process arguments focus on the withdrawal of his attorneys and having to represent himself pro se. Cade characterizes the withdrawal of his counsel as though the district court acted arbitrarily in dismissing his attorneys. (Aplt. Br. at 11.) Cade also claims that the allegedly arbitrary dismissal did not comply with Dist. Utah Civ. R. 83-1.4. These contentions are erroneous. Cade's attorneys were not arbitrarily dismissed by the court; instead, they filed a motion to withdraw their appearance that fully

-11-

complied with Dist. Utah Civ. R. 83-1.4., including a certificate by Cade's attorneys that "Cade has been notified in writing of the status of this case, including the dates and times of any scheduled court proceedings, pending compliance with any existing court orders, and the possibility of sanctions therein." (Aplee. App., Vol. IV at 1314.) To ensure adequate representation for Cade, the district court required Cade's attorneys to file an appropriate responsive brief prior to granting the motion to withdraw unless Cade was able to obtain new counsel before the response date. Due to a clerk's error, Cade's attorneys did not receive the pleadings filed for most of December; however, the court granted them an extension to respond until January 9, 2003. After the attorneys filed a response on Cade's behalf, the court granted their motion to withdraw. The district court did not err in granting the motion.

Turning to Cade's pro se representation, we conclude that Cade was given sufficient time to respond to all of the pending motions. CRS and Bartley and Green filed their motion for summary judgment in October 2003. The Kinnamon Group and the IRS filed their motions for summary judgment in December 2003. On January 10, 2003, Cade was given extra time, until January 21, 2003 to respond to all of these motions. Cade never recorded any objections to the district court's deadline nor did he file a motion for extension of time. Cade had the opportunity to obtain new counsel, but he chose instead to proceed pro se.

After the district court decided the summary judgment motions and the disbursement of the fund, every party had an opportunity to file objections before the final order was entered. Cade did not file any objections. Even as a pro se litigant, Cade was bound to follow the same rules of procedure as litigants represented by counsel, and the district court was thus not obligated to allow him any more additional time for filing his responses. See, e.g. , United States v. Distefano , 279 F.3d 1241, 1245 (10th Cir. 2002); Green v. Dorrell , 969 F.2d 915, 917 (10th Cir. 1992). The district court's timeline for Cade to file his pro se responses did not violate his due process rights.

## III

Cade challenges the district court's grant of summary judgment in favor of all of the appellees. "We review a grant of summary judgment de novo applying the same standard as the district court." McKnight v. Kimberly Clark Corp. , 149 F.3d 1125, 1128 (10th Cir. 1998).

## A

The district court determined that CRS had obtained a valid judgment against Cade for attorney's fees and costs. Because Cade had the opportunity to object to the reasonableness of the fees during the prior proceedings, the court would not reopen this final judgment and granted summary judgment in favor of CRS. On appeal, Cade's argument consists of two sentences: "Summary

-13-

judgment in favor of [CRS] was improper because the District Court failed to apply the substantive law. [CRS] liens are invalid under U.C.A. § 78-51-41. See Phillips v. Smith, 768 P.2d 449 (Utah 1989)." (Aplt. Br. at 26.)

Cade's contention that summary judgment was improper is a bald assertion unsupported by any citation to authority or any explanation as to how the district court "failed to apply the substantive law." Id. at 26. Likewise, Cade fails to offer any reasoning to support his position that the CRS liens are invalid under Utah Code Ann. § 78-51-41 or how the case he cites is relevant. We conclude that Cade has waived these arguments because "[a]rguments inadequately briefed in the opening brief are waived." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) (citations omitted); see also Fed. R. Civ. P. 28(a)(9)(A) ("[Appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies."). [2] Summary judgment in favor of CRS is therefore appropriate.

---

[2] Cade's second argument is also waived because he is making this argument for the first time to this court. "[A]bsent extraordinary circumstances, we do not consider arguments raised for the first time on appeal." Hill v. Kan. Gas Serv. Co., 323 F.3d 858, 866 (10th Cir. 2003) (quotation omitted). Cade has not alleged any extraordinary circumstances that would allow us to consider this argument.

-14-

**B**

The district court determined that Bartley and Green had obtained a valid judgment against Cade for attorney's fees and costs. Because Cade had the opportunity to object to the reasonableness of the fees during these prior proceedings, the court would not reopen this final judgment and granted summary judgment in favor of Bartley and Green. On appeal, Cade contends that there are material questions of fact as to whether Bartley and Green violated their duty to him by not protecting him from an erroneous arbitration action, and questions whether they are entitled to any portion of his settlement funds given their alleged lack of meaningful contribution to the prosecution of the Zions Bank litigation. In addition, Cade argues that Bartley and Green's judgment does not comply with Utah Code Ann. § 78-51-41.

Bartley and Green assert that Cade's first argument is barred by res judicata and that his second argument is barred because he did not raise it before the district court. Green and Bartley obtained a valid judgment for attorney's fees and costs in the amount of $184,329.90 against Cade in the District Court of Clark County, Nevada. The judgment was entered pursuant to the stipulation of the parties, and Cade personally signed and consented to the judgment. That judgment was domesticated in Utah.

Federal courts are required to give full faith and credit to state judgments. Reed v. McKune, 298 F.3d 946, 949-50 (10th Cir. 2002). "'Under res judicata, a final judgment on the merits precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" Id. at 950 (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Utah law controls this court's determination of whether to apply the doctrine of res judicata. Id. at 949 (applying Kansas law to same determination). There are two branches of res judicata: claim preclusion and issue preclusion. Press Publ'g, Ltd. v. Matol Botanical Int'l, Ltd., 37 P.3d 1121, 1127-28 (Utah 2001). Bartley and Green argue that both are applicable, but we need only consider one to determine whether summary judgment on their claims is appropriate.

For claim preclusion, (1) both cases must involve the same parties; (2) the claim must be one that was raised or could have been raised in the first action; and (3) there is a final judgment on the merits. Id. at 1128. Bartley and Green have established all of these factors. First, the parties are the same in both cases. Second, the claims now raised by Cade concern the reasonableness of Bartley and Green's attorney's fees; these claims could have and should have been raised in the action brought by Bartley and Green to collect attorney's fees that Cade refused to pay. Lastly, Bartley and Green's attorney's fee action resulted in a final, stipulated judgment on the merits signed by Cade himself. Cade is

therefore barred from relitigating the issue of the reasonableness of Bartley and Green's attorney's fees in this action.

Cade's second argument, that Bartley and Green's judgment does not comply with Utah Code Ann. § 78-51-41, is waived. As discussed supra with respect to this same argument asserted against CRS, Cade failed to adequately brief this argument and he failed to raise it with the district court; this argument is therefore waived. Adler, 144 F.3d at 679; Hill, 323 F.3d at 866. Summary judgment in favor of Bartley and Green is appropriate.

## C

The district court granted summary judgment in favor of the Kinnamon Group because there was no dispute that Cade had signed the promissory note in favor of the Kinnamon Group and that he had failed to pay the note. Cade does not argue about the merits of the summary judgment determination; instead, he contends that summary judgment is inappropriate because he was not afforded due process. His due process argument is based on the following: (1) his attorneys were dismissed in November and stopped receiving notices and pleadings; (2) he had no opportunity to participate in the settlement negotiations with the Kinnamon Group; (3) the district court only gave him twenty-one days to prepare a response to the Kinnamon Group's motion for summary judgment in addition to five other opposition pleadings; and (4) the court placed the further restriction on

-17-

him that he needed to show good cause for any newly filed objections to the proposed stipulated disbursement of funds.

Cade's due process argument lacks merit. First, his attorneys were not dismissed by the court; they filed a motion to withdraw because Cade was not cooperating with them. While it is true that his attorneys did not receive pleadings in December even though the court had not officially granted their motion to withdraw, Cade himself received all pleadings and notices in December. Further, the court granted an extension for his attorneys to respond to the proposed settlement due to the clerk's failure to include them in the mailing distribution in December. Cade's lack of participation in the settlement negotiations does not violate due process. The parties negotiated the proposed settlement without Cade because they were determining the priority of the claimants. They were also determining the reduced amount of each party's claim to the fund because the aggregate claims exceeded the amount of the fund. Cade had a full and fair opportunity to oppose the claims made by the parties to the fund, and he had a full and fair opportunity to oppose the proposed settlement after it was submitted to the court.

In addition, Cade was given sufficient time to respond to the Kinnamon Group's motion. "In general, litigants proceeding pro se are held to the same procedural standards as those with counsel." Distefano , 279 F.3d at 1245. Cade

himself received a copy of all of the pleadings filed in December. On January 10, 2003, the court gave him _extra_ time to respond to all of the motions until January 31, 2003. Cade never recorded any objections to the district court's deadline, nor did he file a motion for extension of time. Finally, Cade complains that the district court restricted him from filing new objections to the proposed stipulated disbursement of funds unless he could demonstrate good cause. The court placed this restriction on him because his attorneys had previously filed an objection to the settlement and "Cade through his counsel had the opportunity to respond to these issues earlier." (Aplt. App. at 111.) Cade failed to appeal the merits of his summary judgment motion, and his due process argument likewise fails. Accordingly, summary judgment in favor of the Kinnamon Group is appropriate.

**D**

The district court granted summary judgment in favor of the United States because the IRS submitted a certified form 4340, which is sufficient evidence that an assessment was made in accordance with statutory and regulatory mandates. Cade provided no rebuttal evidence; instead, Cade argued to the district court that the IRS improperly disclosed information and that the statute of limitations had run for the IRS to collect on its assessments. The district court disposed of these arguments, and Cade does not challenge the court's analysis on appeal. Instead,

-19-

Cade argues that his due process rights were violated because he did not have "a meaningful opportunity to submit rebuttal evidence." (Aplt. Br. at 25.)

To support his due process argument, he makes the same allegations he made with respect to the Kinnamon Group summary judgment: (1) his attorneys were dismissed in November and stopped receiving notices and pleadings; (2) he had no opportunity to participate in the settlement negotiations with the IRS; (3) the district court only gave him twenty-one days to prepare a response to the IRS's motion for summary judgment in addition to five other opposition pleadings; and (4) the court placed the further restriction on him that he needed to show good cause for any newly filed objections to the proposed stipulated disbursement of funds. As discussed in section C, supra, these arguments lack merit. Because there are no material issues of fact in dispute, summary judgment in favor of the United States is proper.

## E

The district court granted summary judgment in favor of KLM because Cade filed no response to the motion, and because at oral argument, Cade's counsel did not contest the motion, stating "[w]e reviewed that and . . . did not feel like we had defenses that had merit." (Aplt. App. at 69.) On appeal, Cade's argument comprises two sentences:

> If treated as claims for fees, the District Court failed to apply the appropriate reasonableness analysis. (UT R Prof Cond 1.5; UT R J

ADMIN Rule 6-501).  If treated as the collection of state liens, as is sometimes the case with [KLM], the District Court failed to apply UCA § 78-51-41.  <u>See also</u> <u>Phillips v. Smith</u>, 768 P.2d 449 (Utah 1989).

(Aplt. Br. at 24.)

Cade's argument is wholly inadequate and fails to offer any explanation as to how the district court erred.  Cade has therefore waived these arguments. <u>Adler</u>, 144 F.3d at 679; Fed. R. Civ. P. 28(a)(9)(A).  Because Cade has failed to offer any evidence on appeal that demonstrates material facts in dispute or any reasoned argument to support his position, summary judgment in favor of KLM is proper.

**F**

The district court granted summary judgment in favor of Jones Waldo on Cade's counterclaims for breach of fiduciary duty, negligence and malpractice, and on Jones Waldo's claim for breach of contract to recover unpaid attorney's fees.  Cade argued to the district court that Jones Waldo breached its fiduciary duty to him when it simultaneously represented him and Zions Bank.  The district court found that because Cade had been sufficiently informed of the conflict and he had consented to the joint representation in four signed letters, Jones Waldo was entitled to summary judgment.  The district court found alternatively that Cade had failed to establish any damages flowing from the alleged breach of fiduciary duty.

-21-

With respect to Cade's malpractice and negligence claim, Cade alleged that Jones Waldo (through attorney Anthony Rampton) failed to introduce evidence of all of the commissions he claims he was entitled to receive under his contract with Zions Bank. The district court found summary judgment was appropriate because the trial transcript established that Jones Waldo did present this evidence and there were no material facts in dispute. On Jones Waldo's breach of contract claim, the district court noted that Cade had not provided any argument in his brief on this issue and, at the hearing on the motion, Cade's counsel argued only that the attorney's fees were excessive. The district court granted summary judgment in favor of Jones Waldo because it found that the right to at least some of the fees was undisputed and reserved ruling on the reasonableness of the fees until a later hearing.

After the proposed stipulation for settlement was filed by the appellees, Cade filed objections to the settlement agreement arguing that the Jones Waldo fees were unreasonable. On appeal, Cade argues again that the district court erred in its reasonableness determination. This argument is discussed in Section IV infra.

On appeal, Cade contends that there are material facts in dispute precluding summary judgment on Jones Waldo's breach of contract claim and on Cade's

counterclaims. [3] Specifically, Cade argues that a dispute remains whether Rampton had actual settlement authority to waive the punitive damage hearing and settle the Zions Bank litigation for $1.75 million. Cade also argues that whether Rampton's conduct during the trial was strategy or negligence remains in dispute. Finally, Cade argues that whether he voluntarily executed the conflict waivers presented to him, and whether Jones Waldo's involvement with Zions Bank was fully disclosed are factual questions still in dispute.

Cade's first argument regarding Rampton's settlement authority may not be considered by this court because it was not presented to the district court. To the contrary, Cade admitted in his amended response to Jones Waldo's summary judgment motion that he authorized the settlement. One of his argument headings states "Cade's authorization to settle does not prevent the malpractice case against Jones Waldo" and the first sentence of that section states "[a]t the time Cade agreed to settle . . . ." (Aplee. App., Vol. III at 1130.) Because no extraordinary circumstances exist requiring us to consider this issue, Cade's argument is waived. Hill, 323 F.3d at 866.

---

[3] Cade also claims that the district court improperly disbursed funds to Anthony Rampton personally. This issue was not raised in Cade's objections to the settlement agreement, or his affidavit. Cade likewise failed to raise this issue during the time period for objecting to the district court's disbursement order. This issue is therefore waived because there are no extraordinary circumstances present to justify review. Hill, 323 F.3d at 866.

Cade's brief continues to offer undeveloped arguments with his second and third assertions. Cade states, "[t]he question of whether Rampton's conduct during the Zions Bank trial was 'strategy' or negligence also remains. (Docket #8, pp.7-9, #51, pp.12-17, #94, p.16)." (Aplt. Br. at 23.) The first and last record citations appear to be erroneous because they have nothing to do with Cade's assertion. The middle record citation is to the transcript from the hearing on the oral argument, but this section simply restates Cade's summary judgment argument. Similarly, Cade's conflict of interest argument offers as support citations to the district court orders ruling against him on summary judgment. Neither of these citations provide us with record evidence that establishes material facts in dispute:

> To withstand a motion for summary judgment, the nonmovant must do more than refer to allegations of counsel contained in a brief . . . . Sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein. Without a specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.

Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) (internal quotations and citations omitted). Accordingly, we cannot consider these unsubstantiated allegations in reviewing Cade's appeal. Id. Summary judgment in favor of Jones Waldo is therefore appropriate.

-24-

## IV

Cade argues that the district court erred in determining the reasonableness of attorney's fees awarded to Jones Waldo. A district court's ruling regarding the reasonableness of attorney's fees is reviewed for abuse of discretion, with great weight given to the district court's assessment of reasonableness. Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000).

Jones Waldo met its initial burden of establishing the reasonableness of its fees by submitting monthly billing statements for 1999 to 2001. See Sheets v. Salt Lake County, 45 F.3d 1383, 1391 (10th Cir. 1995). Cade's counsel, prior to withdrawing, filed objections to the settlement agreement that included Cade's arguments regarding the reasonableness of Jones Waldo's fees. The district court considered these arguments and it addressed them in its disbursement order.

First, Cade argued that $86,000 in trial preparation costs was excessive. The court found that considering the complexity of the case, the number of witnesses, and the substantial documentation, these costs were reasonable. Cade also argued that it appeared as though he was being overbilled because there were four different attorneys working on his case, as well as paralegals and other staff. The court found that Jones Waldo, in the course of its representation of Cade, successfully settled a case against GE Capital, and handled a complex commercial litigation jury trial, including settlement negotiations; it found, moreover, that

these legal actions justified the time spent by Rampton and the other attorneys. Cade also challenged Rampton's hourly rate, but the court found that Cade had repeatedly signed agreements that included Rampton's billing rates and that these rates were well within the local rates for an attorney of his experience and reputation. Finally, Cade argued that other costs such as secretarial fees, electronic legal research and business dinners were excessive. The court found that these costs were minimal and were likely eliminated by the reductions taken by Jones Waldo for the proposed settlement agreement.

On appeal, Cade argues for the first time that the district court erred by not considering Rampton's movement among three different firms during his representation of Cade and the fact that Cade had to sign four separate retainer agreements. Cade had three opportunities to bring this issue to the district court's attention and he failed to do so. He presents no extraordinary circumstances that would justify our review of this issue; therefore, this argument is waived. Hill, 323 F.3d at 866. In addition, Cade argues that "the District Court failed to apply the appropriate reasonableness analysis. (UT R Prof Cond 1.5; UT RJ ADMIN Rule 6-501)." (Aplt. Br. at 24.) Like many of Cade's arguments in his brief, he has utterly failed to adequately address this issue and explain the reasoning that supports his contention. This argument is likewise waived. See Adler, 144 F.3d at 679; Fed. R. Civ. P. 28(a)(9)(A) . The district

court did not abuse its discretion in its determination of the reasonableness of Jones Waldo's attorney's fees.

The judgment of the district court is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge